## McKEMIE v. WALDROP.

No. 2527.

Court of Civil Appeals of Texas. Eastland.

Oct. 26, 1945.

A. E. Nabors, of Brownwood, for appellant.

E. J. Miller, of Brownwood, for appellee.

LONG, Justice.

J. F. Waldrop, appellee, sued J. B. McKemie, appellant, in trespass to try title and for possession of 25 acres of land situated in the City of Brownwood, Texas. Appellant answered by plea of not guilty, general denial, and by cross-action, in which he alleged that he had occupied the premises for some eight years as a tenant and sought to recover the value of certain improvements placed thereon by him during such time, and to enforce an equitable lien on the land for the payment of same. The court submitted a number of special issues to the jury, and in response thereto the jury found that prior to the time appellant constructed the "milk house" and "milking house" that appellee agreed to pay him for these improvements if and when he wanted the place back; that appellant relied upon such agreement; that the value of the land had been increased $400 by reason of such improvements. The jury also found that the hot water heater installed by appellant increased the value of the land $75, and that the ditches and terraces dug by appellant increased the value $75; that the reasonable monthly rental value of the premises for the months of January, February, March, and April, 1945, was $50. The appellee duly filed his motion for judgment non obstante veredicto, which the court granted. Judgment was entered for appellee for the title and possession of the premises involved and for $200 as rent for the months of January, February, March, and April, 1945. The appellant was denied recovery for the value of the improvements, but under the judgment was given the right to remove the "milk house," "granary," and "milking house" within six months from the date the judgment became final. From such judgment defendant, J. B. McKemie, has appealed.

The following is a substantial statement of the controlling facts viewed from the standpoint of the appellant:

Appellee, J. F. Waldrop, was and had been for a number of years the owner of the land involved, consisting of some 25 acres of land, on which was situated a five room house. In November, 1936, appellant leased the premises for the purpose of operating a dairy on a monthly basis for the months of November and December of that year. On January 1, 1937, he leased the place for a year for $240, payable $20 per month. At the end of that year he leased the place for another year, the consideration being $25 per month, all of said lease contracts being verbal. At the end of his second year appellant approached appellee and endeavored to obtain a written lease for a period of three years. Appellant advised appellee at that time that it was necessary to make some improvements upon the premises in order for him to be in a position to produce and sell Grade A milk. That he, appellant, had been producing Grade B milk during said time he had had said premises and had been operating at a loss. Appellee refused to pay for such improvements, and also refused to execute a three year lease. Appellee told appellant at that time he could make whatever improvements he thought were necessary for his convenience, and that he could have the place for three years, and if he sold the place he would figure enough in the consideration to pay him for said improvements. There was no agreement between the parties as to the kind and character of improvements to be made or the cost thereof. Shortly after such conversation and agreement appellant erected on the premises the "milk house" and "milking house", and some two years thereafter moved a house on the premises, which is known in the record as a "granary." The hot water heater, belonging to appellee and located on the premises, got out of repair and appellant, without the knowledge or consent of appellee, bought a new hot water heater and had it installed on the premises and traded in the old hot water heater on the same. Also, appellant did certain

papering of some of the rooms of the house without the knowledge of appellee. He did some terracing on the land, for which appellee did not agree to pay. Appellant operated his dairy on such place for the three years contemplated by the parties, and at the expiration of the lease for three years appellee rented the premises for two additional years. Appellant continued without interruption in any way in the possession of the land until the fall of 1944, at which time appellee gave him notice that he desired possession of the premises on January 1, 1945. At about the time of the expiration of the additional two year lease, appellee petitioned the OPA to raise the rent on the premises from $25 to $35 per month. This request was granted, and appellant was so notified. He complied with the order of the Rent Board and paid thereafter $35 as the monthly rent on the property. Appellant refused to surrender possession and gave as his reason therefor that he was holding the premises until he had been paid for the improvements he had placed thereon.

■ By the first five points raised by appellant in his brief it is contended that the premises in question were under the jurisdiction of the Office of Price Administration and the Rent Control Board, and complaint is made of the refusal of the trial court to submit certain special issues to the jury that were pertinent to such contention. From an examination of the record, we are of the opinion that the premises involved were not under the jurisdiction of the OPA. From the testimony of John A. Kosack, acting Area Rent Director, it appears that rent control does not apply to farms or dairies. If a person occupies a house on premises within a rent area and such person is engaged in working on such farm or dairy a greater portion of his time, then the rules and regulations of such rent control do not apply. From the record it is shown that appellant was engaged a greater portion of his time in operating a dairy on the premises. Taking this view of the situation, the issues as requested with reference to the Rent Control Board become immaterial, and the court properly refused to submit the same to the jury.

■ Appellant contends that if it be held that the Rent Board had no jurisdiction, that he would be entitled to a judgment for $10 for each month he paid the $35 rent. Appellant never at any time had a written contract for the lease of the premises. As will be seen, the order of the Rent Board raising the rent was entered about the time of the expiration of his last lease. The appellant was under no obligation to pay the increased rent. He could have abandoned the premises at any time he so desired. Further, there is no showing of any injury to him. The jury found in answer to a special issue submitted that the reasonable rental value of the premises was $50 per month. Although not conclusive upon this point, we note from the record that appellant was renting one of the rooms in the house for $35 per month. We overrule this contention.

■ By other points in the brief, appellant contends that the trial court erred in granting appellee's judgment notwithstanding the verdict. If an instructed verdict should have been given by the trial court, then there was no error upon the part of the trial court in granting the motion for judgment notwithstanding the verdict. Rule No. 301, Texas Rules of Civil Procedure; Hutchison v. East Texas Oil Co., Tex.Civ.App., 167 S.W.2d 205.

■ If we are correct in holding that the regulation of the OPA did not apply to the premises involved, then the only question for the determination of the trial court was whether the appellant was entitled to be paid for the improvements placed upon the property. From a careful examination of the statement of facts, we believe it is undisputed that the "milk house" and "milking house" were placed upon the premises with the knowledge and consent of the appellee. But from the record we are convinced that the agreement relied upon by appellant is too indefinite and uncertain for basis of recovery by appellant against appellee for the value of such improvements. There was no pleading or proof as to the size, character, or cost of the improvements to be constructed upon the land or as to the amount to be paid therefor. Nor is there any basis upon which such amount could be calculated or computed. A contract by a landlord to pay for improvements made by the tenant must be definite and certain. 36 C.J. p. 183; Hughes v. Ford, 15 Colo. 330, 25 P. 555. We are further of the opinion that the agreement of appellee to pay for such improvements as proved did not extend beyond a period of three years from the date thereof. Giving effect to the testimony in the

most favorable light to appellant, we believe it shows appellee agreed that appellant might place the "milk house" and "milking house" on the premises at his own expense, and further that if he sold said premises or took possession of them within said period of three years, he would pay for the same. The evidence is conclusive that appellant had the use and possession of such premises for the full period of three years and that the appellee did not sell the property or demand possession of the same at any time within said period. We do not construe the agreement to pay for such improvements to extend to any period of time after the expiration of the lease for three years. Taking this view of the record, we hold that the appellant was not entitled to recover the costs of such improvements. From the testimony of appellant, Mr. McKemie, we quote as follows:

"* * * At the end of the first two years, I went to see Mr. Waldrop; he was then living at Comanche, Texas. It was necessary to make some improvements in order to run a Grade A Dairy and I had to buy the material on a credit, as I had no money; and I told Mr. Waldrop that I wanted a three year lease or I could not or would not be able to make the improvements I needed. * * * I told Mr. Waldrop I wanted a three year lease contract in writing; but he said he didn't want it in writing, as it would not be binding on anybody but him if it was in writing; but he said, 'You go ahead and do whatever you want to in the way of making whatever improvement you need, and you can have it for three years.' * * *

"When I went to Comanche to see Mr. Waldrop, I asked him to pay for the improvements I needed and he said he was not able to do so, but he told me that I could improve it myself for dairy purposes. * * * When Mr. Waldrop refused to pay for putting on the improvements I needed, I then asked for a three year lease to justify me in putting them there, and he agreed that if and when he sold it, he would pay me for the improvements. I asked him if he wanted me to bring him a bill, as I had to buy it on a credit, and he said he did not want it. We did not have any agreement as to what the milk house and shed would cost, for I didn't know how much it would cost. * * *"

"He told me that at the expiration of my time, let it be long or short, and I had it for three years, and nothing was said about releasing it at the end of that time; but he told me that if he sold the place, he would figure in enough to pay me for my improvements, and that if he moved to the place himself without selling it, he would pay me."

"In that conversation, Mr. Waldrop wanted to rent it to me by the year, and I told him that I could not afford to spend the money to make the improvements unless I could get it for three years. Mr. Waldrop told me that I could have the place for three years in order to justify me in making the improvements.

"Question: Well, he did agree to let you have it for three years at that time, the same time when you talked to him and told him you wanted to make the improvements?

"Answer: Yes, sir."

The first issue submitted by the court to the jury is as follows: "Do you find from a preponderance of the evidence that prior to the time J. B. McKemie constructed the 'milk house' and 'milking house' that J. F. Waldrop agreed to pay him for these improvements if and when he wanted the place back?"

This issue was answered in the affirmative. We are of the opinion that the issue as submitted had no basis in the pleadings. The appellant in his cross-action, after setting out a description of the different improvements placed on the premises by him, alleged the following: "That all of said improvements above mentioned are permanent improvements to said property and placed there by this defendant with the knowledge and consent of the plaintiff, and placed on said property under an agreement had between plaintiff and this defendant at the beginning of their relations as landlord and tenant to the effect that the plaintiff never expected to live on the property again, but that he did want to sell said property and that if and when he sold it, he would see that this defendant was paid for the improvements placed on said land by this defendant."

It will be observed that the issue does not conform to the allegations. In other words, the issue submitted inquires if the appellee agreed "to pay for the improvements if and when he wanted the place back," whereas it is alleged "he agreed to pay for the improvements if and when he sold the land." If we have properly construed the testimony in the case, the

issue and the answer thereto is not supported by the evidence. We believe the trial court was warranted in disregarding the issue as submitted and the finding of the jury thereon and in refusing to render a judgment for the appellant based upon such issue.

■■ The other improvements, the granary, terraces, papering of the rooms and hot water heater, were placed thereon without the consent of the landlord, Mr. Waldrop, or at least he did not agree to pay for them. The law is well settled that permanent improvements made by the tenant without the consent of the landlord cannot be removed or the landlord required to pay therefor. Bovet v. Holzgraft, 5 Tex.Civ.App. 141, 23 S.W. 1014; Randolph v. Mitchell, Tex.Civ.App., 51 S.W. 297.

We believe that an instructed verdict would have been proper in this case, and that the court did not err in rendering a judgment for appellee notwithstanding the verdict. As has been heretofore stated, the judgment provided that the appellant could remove the milk house, granary and milking house within six months of the date this judgment becomes final. Although there are no pleadings to support this portion of the judgment, the trial court in his judgment found that it was treated as plead and conceded by the plaintiff that the defendant had such right. Viewing the record as a whole, we believe that the eminently fair trial court entered the correct and proper judgment in this case. We have considered all points raised by appellant in his brief, and finding no reversible error, the judgment of the trial court is affirmed.